UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 13-243 |
| TRACY RICHARDSON BROWN<br>SANDRA PARKMAN THOMPSON | SECTION "K"(3) |

## ORDER AND REASONS

Before the Court is Defendant, Sandra Thompson's Motion to Dismiss Indictment on Grounds of Double Jeopardy. (Rec. Doc. 105). The indictment at issue charges Ms. Thompson with (1) conspiracy to commit health care fraud (18 U.S.C. § 1349); (2) conspiracy to pay and receive illegal remunerations (18 U.S.C. § 371); (3) five counts of health care fraud (18 U.S.C. §1347); and (4) five counts of illegal remuneration (42 U.S.C. § 1320a-7b(b)(1)(A) and (b)(2)(A)). The indictment alleges that from in or around 2005 until in or around 2009, Thompson conspired to execute and executed a scheme or artifice to defraud Medicare and to obtain by means of false and fraudulent pretenses, representations, and promises, money owned by and under the control of Medicare in connection with the delivery of and payment for health care benefits and services. Thompson is also charged with knowingly and willfully receiving illegal kickbacks in return for referring Medicare beneficiaries for the furnishing and arranging for the furnishing of items and services for which payments were made under the Medicare program. In essence, Thompson sold the Medicare numbers of Medicare beneficiaries to her co-defendant, Tracy Richardson Brown (Brown) for cash, knowing that these numbers would be used by Brown and her durable medical equipment company (DME), Psalms 23, LLC (Psalms), to bill Medicare.

The fraudulent scheme allegedly created by Brown and Thompson involved DMEs distributed by Psalms–including, *inter alia*, power wheelchairs (PWC), accessories for PWCs and so-called "arthritis kits." Psalms billed Medicare for providing DMEs, claiming that the DME in question was medically needed by, and provided to Medicare beneficiaries. The Government contends, however, that vast majority of this equipment was not medically necessary and, in many instances, was not provided.

Thompson was convicted in a similar scheme where the provider of DMEs was an entity called Lobdale, a DME company operating in the Baton Rouge area. The conspiracy occurred from February of 2006 to November of 2009. Lobdale payed kickbacks to Thompson. Dr. Jase was involved in the scheme for allegedly writing unneeded prescriptions as is alleged in the instant indictment. But none of the other defendants named in the Baton Rouge case are named in the instant indictment.

Thompson stands convicted of 13 counts of Health Care Fraud in contravention of 18 U.S.C. § 1347 and one count of Conspiracy to Pay and Receive Illegal Remuneration in violation of 18 U.S.C. § 371. Thompson served 18 months on those charges and was ordered to pay $1400 as an assessment and $129,300.00 in restitution.

The Government filed a "Government Notice of Intent to Use Evidence Pursuant to Federal Rule of Evidence 404b and Supporting Memorandum" (Doc. 68) in this case seeking to introduce evidence of the activities in the Lobdale matter at trial in the instant case without implicating Rule 404(b). It argued that evidence from the Lobdale case is admissible in this matter as "intrinsic" evidence; the Government indicated that this Lobdale evidence would be admissible without the rigors of Rule 404(b) because it arose out of the same transaction or

series of transactions as the charged offense, was inextricably intertwined with the evidence regarding the charged offense and was necessary to complete the story of the crime at trial.

In that filing, the Government explained Thompson's actions as follows:

> Thompson often determined which DME would be prescribed. She made referrals for specific DME, whether power wheel chairs or "arthritis kits," based upon how large a kickback she would receive from the DME supplier. Sometimes, when a DME company was paying the highest kickback for all items, a Medicare beneficiary's information would be referred to that company for both a power wheelchair and an "arthritis kit." However, kickback amounts fluctuated during the time period of the scheme, and at times it was financially beneficial for Thompson to "split" the referral of the DME. Thompson submitted a beneficiary's name and medicare number to one DME supplier for a power wheelchair, and to another DME supplier for "arthritis kit" items. Thompson "split" referrals between Psalms and Lobdale a DME company operating in the Baton Rouge area. Thompson was convicted in the Middle District of Louisiana for her conduct with Lobdale.

(Rec. Doc. 68, Government Notice of Intent to Use Evidence Pursuant to Federal Rule of Evidence 404b and Supporting Memorandum at 3 of 11.)

The Government then argued:

> Evidence of "splitting:" between Psalms and other companies such as Lobdale is intrinsic to the fraud scheme because it completes the story of the crime. It explains that Thompson followed the money, pursuing the highest bidder for Medicare beneficiary numbers, rather than what was practical, medically necessary, or in the best interest of the Medicare beneficiary.

*(Id.* at 7 of 11.)

In the United States' Consolidated Response to Defendant Sandra Parkman Thompson's Motion *In Limine* Relating to Federal Rule of Evidence 404(B) and Thompson's Prior Conviction, and Thompson's Motion to Dismiss (Rec. Doc. 110), the Government further opined that evidence of the conviction in the Middle District, the underlying conduct of which occurred

3

during the time period alleged in the indictment is intrinsic evidence of the crimes charged and admissible. (Rec. Doc. at 9 of 15). The Government stated:

> Intrinsic evidence is admissible because it helps the jury "evaluate all the circumstances under which the defendant acted." *United States v. Royal*, 972 F.2d 642, 647 (5th Cir. 1992). If "both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged," these are considered intrinsic to the charged crime as well. *Id.* Such evidence "complete[s] the story of the crime by proving the immediate context of events in time and place." *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996). In this case, Thompson shopped her Medicare numbers to the highest bidder–sometimes splitting DME between Psalm and Lobdale, other times "double dipping" with these same Medicare numbers to sign these beneficiaries up with home health care. This conduct is entirely intrinsic to the fraud scheme charged in this indictment because it completes the story of the crime and provides context to Thompson's conduct. It demonstrates her intent to commit health care fraud, showing that she followed the money, pursuing the highest bidder for Medicare beneficiary numbers rather than what was practical, medically necessary or in the best interest of the Medicare beneficiary whose protected health information she sold. Her use of the same beneficiary's Medicare number at both Psalms and Lobdale shows that she, and not a doctor, was directing what DME the beneficiary should receive. Her sale of Medicare numbers of the same beneficiaries to Lobdale and home health companies "complete[s] the story of the crime by proving the immediate context of events in time and place." *Id.*

(Rec. Doc. 110 at Pages 9-10 of 15).[1] As a result of the Government's basis for the contention that the Lobdale evidence is admissible as intrinsic evidence as well as Thompson's counsel's trial preparation, Thompson filed the instant motion to dismiss based on double jeopardy . The Court will now turn to the issue of whether double jeopardy applies in this instance.

---

[1] In response to a representation made by Thompson's counsel during a telephonic status conference, the Government filed a Supplemental Memorandum Addressing Thompson's Motion to Dismiss. (Rec. Doc. 128). In that document, the Government noted that Thompson's representation to the Court that the Government had contended that her sale of Medicare numbers to Psalms and Lobdale emerged from a "single criminal episode" in its attempt to have Lobdale evidence admitted as being "intrinsic" evidence was incorrect. The Government noted that it was relying on another factor– that this evidence was needed to "complete the story"– rather than the Lobdale evidence arising "out of a single criminal episode" for purposes of it being intrinsic evidence. The Court recognizes that distinction and indeed notes that the Government argued in the alternative that the evidence sought to be introduced is also "extrinsic" and would pass a Rule 404(b) test as to admissibility. Nonetheless, it is the factual characterization of Thompson's role in the conspiracy that opened the door to this motion.

**Analysis**

       The test to determine whether double jeopardy attaches in a conspiracy case is articulated in *United States v. Jones,* 733 F.3d 574 (5th Cir. 2013) as follows:

> "In a conspiracy case, the central issue for double jeopardy purposes is whether there was one agreement and one conspiracy or more than one agreement and more than one conspiracy."  *El-Mezain*, 664 F.3d at 546 (citation omitted).
>
> > To determine whether the alleged conspirators entered into more than one agreement, we evaluate five factors: 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offense charged that indicates the nature and scope of the activity that the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place.
>
> *Delgado,* 256 F.3d at 272 (citation omitted). "No one factor ... is determinative; rather all five factors must be considered in combination." *Id.* (internal quotation marks and citations omitted).

*Id.* at 580-81.  In the *Jones* case, Henry Jones ("Henry") had been charged in three separate cases with conspiracy and Medicare fraud: the *Ngari* case, the *Jones* case, and the *McKenzie* case. Henry, who was named in all three cases, was found guilty in the *Ngari* case, pleaded guilty in the *Jones* case and then filed a motion to dismiss in the *McKenzie* case which motion was denied. He appealed the district court's denials of his motions to dismiss an indictment on double jeopardy and multiplicity grounds.

       Factually, in the *Ngari* case, Henry stood in the analogous shoes of the defendant Thompson here–a "recruiter" or "marketer".  However in the *Jones* case and the *McKenzie* case, he was acting in the shoes of the DME provider.  The appellate court in *Jones* opinion applied the five part test which the Court will now undertake.  After considering all of the factors, only two–the location of the events and the statutory crimes charged–supported a finding that there

was a single conspiracy in the *Jones* case. The timing, the participants, the goals of the conspirators, and the nature of the conduct the Government was trying to stop, supported the *Jones* court's finding that there were two conspiracies.

The Court will now analyze these same factors in the context of the Lobdale case and the instant one.

1. **Time**

The Lobdale conspiracy allegedly occurred between February of 2006 and November of 2009. The Brown conspiracy allegedly occurred between February 2005 to February of 2009. Thus, from a temporal perspective, there is substantial overlap.

2. **Co-Conspirators**

The only co-conspirators that are the same in both cases is one doctor–Dr. Anthony Jase and one "recruiter"–the defendant in question, Ms. Thompson. Dr. Jase is an unindicted co-conspirator in the *Brown* case. As stated in *Jones*:

> The nature of the overlapping co-conspirators' participation is relevant to finding a single conspiracy, especially when the co-conspirators are the central characters, or the key personnel in both cases. If the central figures of the cases are different, or if they serve different functions for purposes of the conspiracies, it is less likely that there is a single agreement.

*Jones,* 733 F.3d at 581-82.

*Jones* teaches that the DME provider is considered the "central organizing figure." Ngari, the DME provider in the *Ngari* conspiracy was found to be the central organizing figure in that eponymous case, and Shedrick McKenzie, who was a corporate officer for and operator of the

DME provider, Solutions, was the central organizing figure in the *McKenzie* conspiracy.  In those two instances, Henry was a recruiter in the *Ngari* case and an operator of a corporation in the *McKenzie* case.   As such, the Court found that this factor indicted that there were two separate conspiracies.

Thus, it appears that the "central organizing figure" in the Lobdale suite was Young Okoro Anyanwu, the operator of Lobdale Medical Services LLC.  In the case at bar, Tracy Richardson Brown was the operator of Psalms 23 DME, LLC, and as such the "central organizing figure" in this case.  While Thompson had the same recruiter position in both conspiracies, this would not indicate that the conspiracies were the same.

However, as noted, the Government in its filings concerning the applicability of Rule 404(b) to evidence in the Lobdale case and its admissibility herein, took the position that in reality Ms. Thompson was the hub from which the spokes of the conspiracy spread.  (See, *supra*, at 3).  The Government argued that she was directing which DME a beneficiary received and thus she was running the show for both schemes.  Thus, the Government's description of her directive role in both schemes arguably could demonstrate that there is a single conspiracy–that being hers. Moreover, in the transcript of the Lobdale trial, the Government argued to the jury:

> Sandra Parkman Thompson was the engine in some ways that drove the scheme to defraud.  She was the one who actually found these beneficiaries' names and numbers.
>
> Whether she directly solicited them or not, or whether she got the names from other people, she brought the names and medicare numbers to Dr. Anthony Stephen Jase, watched as he signed, knowing they hadn't been seen, and she also was the engine that drove these prescriptions to Baton Rouge, Louisiana to Lobdale Medical Supply Company–Services Company, where they took these prescriptions, started creating the paperwork, which ultimately resulted in the filing of claims.  Those are the players in the scheme to defraud.

(Transcript from *United States v. Thompson*, Cr. No. 10-101, M.D. La., Doc. 122-4 at 4 of 4). Based on these arguments, Thompson in essence maintains that this characterization demonstrates because the Government has made these factual representations, the clear implication is that then Thompson should be considered the "central organizing figure" and as such, there is only one conspiracy, implicating her being subjected to double jeopardy in this instance.

While this argument is compelling in some respects, the Court will follow the dictates of *Jones*. The Court finds that the identity of the DME prevails as to who is considered the central organizing figure. Here there were two distinct DME providers and as such, the Court finds this factor demonstrates that these were two separate conspiracies.

### 3.     The Statutory Offenses Charged in the Indictments

Clearly, the charges in both the Lobdale and the Brown indictments are practically identical. In the Lobdale matter, Thompson was convicted on 13 violations of Health Care Fraud in violation of 18 U.S.C. § 1347 and one count of Conspiracy to Pay and Receive Illegal Remuneration in violation of 18 U.S.C. § 371. In the Brown case, Ms. Thompson faces charges of Attempting and Conspiracy to commit health care fraud in violation of 18 U.S.C. 1349, one count of Conspiracy to Pay and Receive Illegal Remuneration in violation of 18 U.S.C. § 371, nine counts of Health Care Fraud in violation of 18 U.S.C. § 1347 and § 2; and seven counts of illegal remuneration in violation of 42 U.S.C. 1320a-7b(b)(1)(A) and 1320a-7b(b)(2)(A). While the charges here are more expansive than those brought in the Middle District, the overlap is so substantial, this factor indicates that there is a single conspiracy.

4.  **The Nature and Scope of the Activity the Government Sought to Punish and the Goal of the Conspirators.**

While again as previously discussed, the activities of Dr. Jase and Sandra Thompson are of the same nature, the goal and the scope of the activities are different. The goal and scope of each conspiracy was to enrich a DME provider who then payed from those proceeds its co-conspirators–the doctor who provided the fraudulent prescription and the recruiter who provided the Medicare patient number. Thus, the central organizing figure in these two cases are different–Lobdale in the Middle District case and Psalms in the instant one. As such, the goal and scope of each were different indicating these were separate conspiracies.

5.  **Place Where the Events Alleged as Part of the Conspiracies Occurred.**

While both DME providers were in Louisiana, Lobdale was centered in Baton Rouge and Psalm 23 was centered in New Orleans. The Lobdale indictment indicates that the crimes were committed "in the Middle District and elsewhere" and the *Brown* indictment indicates that the crimes were committed in New Orleans and elsewhere. However, Thompson maintains that she solicited Medicare beneficiaries in New Orleans, Louisiana and Dr. Jase falsified their records supporting the beneficiaries' entitlement to DMEs in New Orleans. As such, Thompson contends that the events as to the Lobdale conspiracy and the Brown conspiracy occurred in the same place. However, as the central target of each conspiracy was located in a different district, this factor militates against finding a single conspiracy.

**Conclusion**

Based on the foregoing, while the time period and the statutory charges brought are the practically the same, the other three factors–persons acting as co-conspirators, the goals and the scope and the places where the events alleged as part of the conspiracy took place–are different. As such, the Court finds that the Lobdale and Brown prosecutions are two separate conspiracies, and thus the Motion to Dismiss the Indictment on Grounds of Double Jeopardy must be denied. However, the analysis does not end there.

In *Abney v. United States,* 431 U.S. 651 (1977), the Supreme Court held that the denial of a motion to dismiss an indictment on the basis of double jeopardy results in an appealable final order. However, in a footnote the Court recognized that such a holding might encourage some defendants to engage in *dilatory* appeals." *Id.* at 662 n.8 (emphasis added); *United States v. Angleton*, 221 F. Supp.2d 696, 734 (2002). As determined in *United States v. Dunbar*, 611 F.2d 985 (5th Cir.), *cert. denied*, 447 U.S. 926 (1980), if a trial court finds that an appeal from a pretrial double jeopardy motion is frivolous, it is not divested of jurisdiction. *United States v. Kalish*, 690 F.2d 1144, (5th Cir. 1982) citing *Dunbar* at 986. Thus, the next inquiry is whether this motion was frivolous.

As one district court stated:

> The Fifth Circuit has instructed that courts should apply the literal meaning of the term "frivolous" when determining whether to stay the case pending interlocutory appeal, bearing in mind that the frivolousness inquiry is intended to prevent dilatory claims, not colorable ones. *See United States v. Kalish,* 690 F.2d 1144, 1154 (5th Cir. 1982); *see also Angleton*, 221 F. Supp.2d at 736-37.

*United States v. Bayly*, 2008 WL 89624, *7 (S.D. Tex. Jan. 7, 2008).In *Dunbar*, the court found the motion to be frivolous because it was based on a purely legal argument which was foreclosed

by numerous decision of both the Supreme Court and the Fifth Circuit. *United State v. Gutierrez-Alvarez*, 2014 WL 2481873 (S.D. Tex. June 3, 2014). However, if the claim is colorable, it cannot be said to be frivolous. "A colorable claim 'presupposes that there is some possible validity to a claim.' [*Richardson v. United States*, 468 U.S. 317,] 326 n. 6. A claim is not colorable if 'no set of facts will support the assertion of the petitions's claim of double jeopardy.'" *United States v. Shelby,* 604 F.3d 881 (5th Cir. 2010).

Because of the characterization made by the United States of Thompson having been the lynchpin of both schemes by virtue of her control over the determination of which DME provider would provide the equipment, Thompson's argument as to there being one conspiracy and thus double jeopardy attaching is not frivolous. By virtue of the factual characterization made to underpin the Government's contention that evidence of the Lobdale conspiracy was intrinsic in nature and thus not subject to a Rule 404(b) analysis, the Government opened the door to Thompson's argument and provided a non-frivolous basis for this motion to have been brought. Accordingly,

**IT IS ORDERED** that Sandra Thompson's Motion to Dismiss Indictment on Grounds of Double Jeopardy (Rec. Doc. 105) is **DENIED.**

New Orleans, Louisiana, this 20th day of April, 2016.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE